Good morning, Your Honors, and may it please the Court, my name is Chris Fredmonski, I'm here as pro bono counsel on behalf of the Plaintiff Appellant, Robert E. Garcia. We're here today to challenge the District Court's grant of summary judgment in favor of the defendants. The District Court erred in dismissing Mr. Garcia's Section 1983 claim on the ground that he could not establish a compensable injury. Mr. Garcia's claim relates to a period of 232 days between January 17th and September 5th, 2008, where he served a term of post-release supervision that was not imposed by the sentencing court. It is undisputed that that term was not imposed by the sentencing court, and this court held in Early v. Murray in 2006 that sentences that are not imposed by a sentencing court are unconstitutional as a matter of law. And subsequent decisions from this court have held that the judicial – the administrative imposition or enforcement of such sentences are also unconstitutional and violate clearly established law for purposes of qualified immunity. You've got a problem, it seems to me, relating to a decision that we just issued in August. Is that correct? That's correct, Judge. And the problem actually relates earlier. The real issue is Hassel v. Fisher in 2018. That's correct. It seems that Hassel, at least from the raised decision this past August, has been interpreted as adding an adverse consequence requirement for due process claims related to post-release supervision. If that is the case, I respectfully submit that that decision should be reconsidered for several reasons, and the first of which is that adding an adverse consequence or compensable injury element to due process claims cannot be reconciled with the Supreme Court's decision in Carey v. Pifus and four decades of consistent precedent from this court that have consistently held that compensable injury is not an element of civil rights claims, generally speaking. That applies to both procedural and substantive civil rights claims. I believe there's precedent from this Court applying that to Fair Housing Act claims. And the Court — this Court has made clear that it is an error of law to dismiss a claim, including on summary judgment, on the grounds that the civil rights plaintiff has been unable to establish a compensable injury. Looking at the magnitude of adding a compensable injury element to these types of claims must be viewed in that context and also in the context in which the Hassel court respectfully reached that decision. As Judge Hall noted in his dissenting opinion in the Rays case, the issue was not briefed and argued before the Hassel court. And in Judge Hall's own words, it appears to have been more of an afterthought. Why wouldn't the case need to be dismissed on the basis of qualified immunity in any event? Judge, well, the qualified immunity issue also, this Court in Vincent and even in Hassel and Betances and decisions after Early have made clear that the administrative imposition and enforcement of PRS is a violation of clearly established law. What that necessarily means is that — excuse me. For a violation of clearly established law, that means that the right has already been defined with reasonable clarity and that every reasonable defendant would understand that acting contrary to that law is unlawful. But all innumerable judges believed otherwise. Innumerable judges, administrative officials, everybody, virtually everyone, believed the contrary. At the State level, that's correct. But in this Court's decision in Vincent, they held that the relevant time period for whether qualified immunity exists in these types of cases is in 2006, when the Early decision decided that enforcing or imposing these administrative PRS terms was unconstitutional. And going forward, while the majority of the defendants in these types of cases have been the high-level Department of Corrections and parole officials, that doesn't necessarily mean that this case, which does involve admittedly lower-level parole officials, is any different. But with regard to two of the defendants, there are no facts in the record that suggest they had any involvement at all. With regard to one, it's — if I understand, and help me understand the record differently if I'm missing something, but there's a single conversation in which the parole officer says, well, you should take it up with court, and you're saying it's clearly established that he should have known that even though the high-level policymakers were in the process of fixing the early situation and resentencing and they had a time schedule for how to do that, that he should have known that it Yes, Judge Livingston. So the high-level officials, the Court in Betances and in Hassell noted that these officials, initially when they learned of the decision, did nothing in response. They waited — I'll take the — Terence Tracy, who was the chief counsel for the Division of Parole, since we have all parole defendants here, waited 15 months to do anything in response to the decision. Now, the lower court cases in Scott v. Fisher and in the Hassell case itself have dismissed cases against low-level parole officials on the grounds that there was no allegation at that time that they had any knowledge whatsoever that the plaintiff at issue had unconstitutional PRS. This case is different from those scenarios because the undisputed record is that Defendant Suero was informed by our client that he had — our client had post-release supervision that was not imposed by the sentencing judge. And the undisputed response to that complaint was to take it up with the courts. And I think a logical extension of Vincent and Hassell and how courts have been analyzing the qualified — this Court has been analyzing the qualified immunity issue is to look at what was done in response. And clearly, doing nothing in response to this complaint is — does not allow the defendant to take advantage of qualified immunity. I want to circle back to the Hassell issue because I think it's important. And the reason being is that the Supreme Court and this Court have noted that there are certain absolute rights that need to — there needs to be redress in the courts, if not through monetary damage, but at least a judgment for anomalous damages. The problem — the problem — and, look, I very much appreciate it. I chair the pro bono panel, so I appreciate what you're doing. On behalf of the committee, but the problem as an institutional matter is that we've got a decision on point, I think you'd agree, from a month and a half ago. And now you're asking us as a panel to revisit, reconsider that decision. We're not really in a position to do that. And the majority, Judge Kodal and Judge Carney in Hassell, had the benefit of Judge Hall's dissent. So they knew about Cary. They knew about, you know, another possible avenue. So why isn't this decided, and why shouldn't we just move on? Well, as Judge Hall noted in his dissenting opinion, the majority appeared to have applied Hassell directly and sidestepped the Cary issue. And I understand the position that I'm in and what I'm asking the Court to do. But as Judge Hall noted, if this truly was inadvertent, and looking at the Hassell decision, the case that was cited to support this rule of law, in essence, was a case of whether there's a claim in connection with a defendant who has been convicted of a crime but has not yet been sentenced. And that is not the case here. These are cases where it is clear that there is a due process violation. And one other, I see I have — I'm out of time, if I may continue. So the — one thing that's very important to note, and this is what Judge Hall pointed out in his dissenting opinion, there is conflict within the Hassell decision itself. Before concluding that there was no adverse consequence and, therefore, apparently no due process claim, the Hassell Court determined that the defendants were not entitled to qualified immunity. Looking at the elements of what you need to establish qualified immunity, that necessarily entails that the Court found that there was a due process violation. And Judge Hall's main point in dissent was if the conflict within Hassell and the consequences for adding an unprecedented and potentially insurmountable hurdle for civil rights plaintiffs who can't prove compensable damages should be considered, if at all, through the Court's mini-en banc process, if it were inclined to do so. May it please the Court. David Frankel on behalf of the State Defendant's Appellees in this case. And there's two independent reasons to affirm the decision below. First is that there was no due process violation in the first instance here. As Hassell and very recently in this Court's opinion in Reyes two months ago made clear, Garcia suffered no violation of his due process rights and thus cannot obtain any damages, nominal or compensable. The entirety of Garcia's PRS term here overlapped with a period of conditional release. And as Garcia concedes, the terms of PRS were no more onerous than the lawful terms under conditional release would have been in this case. Garcia has conceded this in his briefs. There's unrebutted evidence in depositions that it was in fact administered the same and that there was no more onerous requirements because of the PRS. But did we go astray in Hassell and Reyes in conflating the right and remedy? No, Your Honor. And as this Court has just held in Reyes, to the extent that there was any ambiguity in Hassell, Hassell, the majority in the dissent in Reyes get into this. And the majority holds that the holding in Hassell was about the lack of a due process violation in the first instance, that it is an element of a due process violation that there must be a deprivation here. And where the lawful sentence imposed here was all that was certain, where there were no additional requirements based on the PRS, there is no deprivation in the first instance, and that's an element of a due process claim. It was not simply a matter of compensable injury, which is what ---- We have repeatedly said, and I'm just trying to understand due process a little better, we have repeatedly said that when a defendant is deprived of liberty without adequate process, but the defendant is able to show that the adverse action would have happened anyway, that that doesn't mean that there wasn't a due process violation. I mean, you could say that's not invariably what is said, but we've said things like that, and Carey seems to say that. Well, I would quote from the Reyes decision, where they say the more onerous requirement follows from the basic requirement that a plaintiff claiming a violation of due process must show a deprivation of liberty or property. And I think the distinction from Carey is that there was the deprivation. The students were suspended without any pre-deprivation process. And here you have no deprivation above and beyond what was already mandated by the in place before then. That as long as the current lawfully imposed sentence was in place, as it was for the entirety of the term here, there is no deprivation. This is what the majority in Reyes just held. And Judge Koto writes that with the benefit of Judge Hall's dissent, partial dissent referring to Carey. Exactly. I mean, I take Judge Hall's dissent in large part to be making the argument that Garcia is now making. But, of course, that argument was in a dissent and not the majority. To the extent this Court has any authority to reconsider that very recent decision through Mignon-Banc or other process, my understanding is that the Mignon-Banc does require unanimity among the Court. So it seems unlikely that at least one member of the majority who sits with this Court would be willing to reconsider a decision that was just issued. But in any event, there is the entirely independent grounds for affirmance here, which is the qualified immunity here. And so even if there's some other reading of Hassell and some other reading of Reyes, it would not have been clearly established law in 2008 that Garcia's rights were being violated when an independent, lawful, conditional release sentence authorized the community's supervision. And I think another way of putting this is that if parole officers were aware that there was a lawful sentence authorizing them to do everything that they did in this case and authorizing every restriction of community supervision, the fact that there was also some other unpronounced sentence wouldn't have changed the way that they acted. And there certainly is no clearly established law to the contrary. And in addition, these PRS cases have largely turned on questions of whether high-level policymakers were taking the appropriate steps with reasonable promptness. But here we have a case involving line-level parole officers. And there was no act or omission that these line-level officers had based on one single statement to one of these officers that maybe the PRS sentence was unlawful to take any affirmative act or omission. They had no policymaking responsibilities. They were not in charge of bringing the department into compliance with the requirements of early. And we also know that the policymakers at this point were, in fact, well aware of the situation with PRS and well aware of the situation of Garcia and others similarly situated, and were taking active steps to address that. And whether or not those steps were sufficient is in some sense outside the bounds of this appeal, because the individual defendant sued here had no responsibility to second-guess what those policymakers were doing in this case. I'm happy to answer any other questions the Court may have. We'd ask this Court to affirm. Thank you. Just very briefly, on the qualified immunity point, I think this two important distinctions are that the law is clearly established for all officials. The defendants want to cast a very specific, highly technical that it wasn't clearly established for these types of plaintiffs who have overlapping, potentially And the critical point here is that the low-level line parole officer was informed of the unconstitutional sentence and did nothing in response. That is the key fact that distinguishes this from the other cases with the low-level. Is this largely about attorney's fees? Is that what's at stake here? Judge Wall, generally, that's correct. There are cases and there is a risk that attorney's fees could come into play to drive these types of suits. Two points on that. The Supreme Court and this Court have made clear that the amount of attorney's fees is a matter of discretion to the district court. And oftentimes, when nominal damages are the only thing that is awarded, zero dollars is the appropriate amount of attorney's fees. There is another point related to that, and that is in early itself, Judge Walker noted that the decision would potentially open the doors to significant litigation to plaintiffs such as our client who would be bringing suit in connection with these types of claims and recognize that that was going to be a natural consequence of the decision and held nonetheless that these pre-arrest terms were unconstitutional. My last point is just that in the first decision that I've been able to find from the Second Circuit applying Kerry was a case called Davis v. Village Park. And there the Court held that Kerry makes clear even mere technical violations of a plaintiff's constitutional rights are actionable for at a minimum nominal damages. And that's what we're seeking here. Thank you, Your Honors. Thank you both. And thank you for your pro bono representation. Nicely done on both sides.